**KEY BANK OF MAINE**

v.

**Gary L. ESTES et al.**

Supreme Judicial Court of Maine.

Argued Dec. 5, 1995.

Decided Dec. 26, 1995.

Michael S. Haenn, Jana S. Stabile (orally) Bangor, for Appellant.

Terence M. Harrigan (orally), Vafiades, Brountas & Kominsky, Bangor, Kerry Clark Jordan (orally), Curtis & Griffin, Orono, for Appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, and LIPEZ, JJ.

GLASSMAN, Justice.

Key Bank of Maine appeals from the entry of a summary judgment in the Superior Court (Piscataquis County, *Kravchuk, J.*) in favor of Gary Estes, Joanne Estes, and Barco Federal Credit Union[1] on the Bank's complaint to determine the title to a boat in a forcible entry and detainer action. The Bank contends that the trial court erred in determining as a matter of law that, pursuant to 11 M.R.S.A. § 9–307(1) (1995), the Estes as buyers in the ordinary course of business hold title to the boat free of the Bank's security interest. We affirm the judgment.

The record discloses the following undisputed facts: In March 1992, Michael and Barbara Schultz purchased a bass boat from Taylor Sporting Goods in Brewer, where Michael was employed as a sales manager. The Schultzes' purchase was financed through a $16,982.80 loan from Key Bank of Maine, secured by the boat as collateral. The Bank perfected its security interest in the boat. Shortly after this purchase, Michael became the owner and operator of Taylor Sporting Goods. The store's name was changed to Mike's Boating and Sports. Thereafter, Michael placed the boat in the inventory of Mike's Boating and Sports, and in February 1993, he displayed it together with other boats at a boat show held in Bangor as being for sale through Mike's Boating and Sports. Gary and Joanne Estes attended the show and purchased the boat from Michael for $16,675, after obtaining financing through a $12,675.50 loan from Barco Federal Credit Union. Repayment of the loan was secured, in part, by the boat as collateral. Barco perfected its security interest in the boat.

In April 1993, the Bank instituted the present forcible entry and detainer action

---

1. By an order of the District Court dated May 19, 1994, Barco Federal Credit Union's motion to intervene as a party defendant was granted.

pursuant to 14 M.R.S.A. §§ 6001–6008 (1980 & Supp.1995), seeking to obtain possession of the boat based on the alleged default of the Schultzes on their loan payments. By their answer, the Estes contended, *inter alia,* that they held title to the boat. Barco intervened in the action, asserting superior title to that of the Bank. After a hearing, the District Court (Dover–Foxcroft, *Gunther, J.*) determined, pursuant to 14 M.R.S.A. § 6007 (1980), that the defendants' claim of title to the boat was not frivolous or intended for delay, and the case was transferred to the Superior Court. After a hearing on the parties' respective motions for a summary judgment, the court granted the defendants' motion. From the summary judgment entered accordingly, the Bank appeals.

■ A summary judgment may be granted when the record reveals that there is no genuine issue of material fact and any party is entitled to a judgment as a matter of law. M.R.Civ.P. 56(c). When a party appeals from a summary judgment, we review the evidence in the light most favorable to the party against whom the judgment was entered and determine whether the trial court committed an error of law. *Tobin v. Casco Northern Bank, N.A.,* 663 A.2d 1, 2 (Me. 1995).

The general rule pursuant to the Uniform Commercial Code, 11 M.R.S.A. §§ 1–101– 10–108 (1995), is that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof, unless the disposition was authorized by the secured party in the security agreement or otherwise,. . . ." *Id.* § 9–306(2). An exception to this general rule is provided by section 9– 307(1), that states in pertinent part:

A buyer in ordinary course of business (section 1–201, subsection (9)),[2] . . . takes free of a security interest *created by his seller* even though the security interest is perfected and even though the buyer knows of its existence.

11 M.R.S.A. § 9–307(1) (emphasis added).[3]

■ Contrary to the Bank's contention, on the record before it the trial court properly determined as a matter of law that the Estes are buyers in the ordinary course of business and hold title to the boat free of the Bank's security interest. We reject the Bank's contention that the sale by Michael of the boat he jointly owned with his wife, Barbara, created half ownership interests in the boat between Barbara and the Estes.

At the time of the sale of the boat to the Estes, Michael represented to them that it was his boat. There was no evidence before the court that Barbara was not aware that her husband was a merchant dealing in the sale of boats or that she had not acquiesced to his possession of the boat for the purpose of its sale. Accordingly, on the record before it the court properly could have determined as a matter of law that Barbara had entrusted her interest to Michael and thus, pursuant to section 2–403(2),[4] had given him the power to transfer all ownership rights in the boat to the Estes.

The entry is:

Judgment affirmed.

All concurring.

---

2. A buyer in the ordinary course of business is defined, in pertinent part, as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . ." 11 M.R.S.A. § 1–201(9) (1995).

3. The policy reasons underlying this risk-allocation have been expressed by one commentator as follows: "Customers who buy goods from the inventory of debtor-dealers are relieved by section 9–307(1) of the burden of checking the filing system for public notices of security interests in

the goods. To require otherwise would unduly impede the free flow of commerce in goods. . . ." William H. Lawrence, *The "Created by His Seller" Limitation of Section 9–307(1) of the U.C.C.: A Provision in Need of an Articulated Policy,* 60 Ind.L.J. 73, 80 (1984–85).

4. By leaving the boat in Michael's control after its purchase, Barbara's interest is governed by 11 M.R.S.A. § 2–403(2), that provides:

Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.